## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

MICHAEL JACOBSON, on behalf himself
and all others similarly situated,

*Plaintiff,*

v.

FALLON AMBULANCE SERVICE,
TRANSFORMATIVE HEALTHCARE,
LLC, and COASTAL MEDICAL
TRANSPORTATION SYSTEMS LLC,

*Defendants.*

Case No.: 1:24-cv-10269

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Michael Jacobson ("Plaintiff"), by the undersigned counsel, files this Class Action Complaint, individually and on behalf of others similarly situated (the "Class"), against Defendants Fallon Ambulance Service ("Fallon Ambulance"), Transformative Healthcare, LLC ("Transformative Healthcare"), Coastal Medical Transportation Systems LLC ("Coastal Medical," together with Fallon Ambulance and Transformative Healthcare, the "Defendants"). The following allegations are based upon Plaintiff's personal knowledge, the investigation of counsel, and on information and belief as to all other matters.

## <u>INTRODUCTION</u>

1.      Plaintiff brings this class action against Defendants for their failure to properly secure Plaintiff's and Class Members' personally identifiable information ("PII") and personal health information ("PHI") (collectively, "Private Information"), including but not limited to patient names, addresses, Social Security numbers, medical information (including testing or vaccination information) and information provided to Fallon Ambulance in connection with

employment or applications for employment (the "Data Breach").[1]

2.      Defendant Fallon Ambulance was a Massachusetts-based emergency medical transportation services company responding to patient emergencies and providing administrative services for affiliated medical transportation companies, until it ceased operations in December 2022.

3.      Fallon Ambulance was purchased by Defendant Transformative Healthcare's Massachusetts medical transportation division in 2018, which was subsequently acquired by Defendant Coastal Medical in 2022.

4.      Defendant Transformative Healthcare is a healthcare company contracted by hospitals and healthcare facilities to provide logistics services and other programs. Transformative Healthcare claims that its "mission is to partner with healthcare institutions to innovate how both patients and data move through our healthcare delivery system."

5.      Defendant Coastal Medical is "a 24/7 emergency and non-emergency transportation system serving healthcare institutions and patients across New England." Coastal Medical claims to "innovate with the latest advancements in technology, equipment and practice."

6.      Defendants failed to adequately safeguard Plaintiff's and Class Members' highly sensitive Private Information, which they collected, stored, and maintained.

7.      Based on the notice posted on its website, Defendant Fallon Ambulance admits that the Private Information of Plaintiff and Class Members was accessed and compromised by an unauthorized third party.

8.      Defendants' positions as preeminent health organizations that hold a wide range of

---

[1] Fallon Ambulance, Notice of Security Incident, available at https://www.fallonambulance.com/ (last visited January 30, 2024).

patient information means that Defendants should have known how to prevent a data breach, and/or mitigate harm from such a breach. Defendants had a heightened duty to protect Plaintiff's and other Class Members' data.

9. Defendants' security failures enabled the hackers to steal the Private Information of Plaintiff and other members of the Class—defined below. These failures put Plaintiff's and other Class Members' Private Information at a serious, immediate, and ongoing risk. Additionally, Defendants' failures caused costs and expenses associated with the time spent and the loss of productivity from taking time to address and attempt to ameliorate the release of personal data. Mitigating and dealing with the actual and future consequences of the Data Breach has also created a number of future consequences for Plaintiff and Class Members—including, as appropriate, reviewing records of fraudulent charges for services billed but not received, purchasing credit monitoring and identity theft protection services, the imposition of withdrawal and purchase limits on compromised accounts, initiating and monitoring credit freezes, the loss of property value of their Private Information, and the stress, nuisance, and aggravation of dealing with all issues resulting from the Data Breach.

10. The Data Breach, which impacted at least 911,757 individuals, was caused and enabled by Defendants' violation of their obligations to abide by best practices and industry standards concerning the security of patients' records and private information. Defendants failed to comply with security standards and allowed their patients' Private Information to be compromised, which could have been prevented or mitigated after the Data Breach occurred.

11. Accordingly, Plaintiff asserts claims for: negligence; breach of implied contract; unjust enrichment/quasi-contract; and breach of fiduciary duty; and seeks injunctive relief, monetary damages, and statutory damages, as well as all other relief as authorized in equity or by

law.

## THE PARTIES

12.     Plaintiff Michael Jacobson ("Mr. Jacobson") is a resident of Freeport, Maine, and a citizen of Maine. Mr. Jacobson received emergency medical services from Fallon Ambulance when it operated and prior to its cessation of operations in December 2022. In order to receive emergency medical transport from Fallon Ambulance, Mr. Jacobson was required to disclose his Private Information, which was then entered into Defendants' database and maintained by Defendants.

13.     Defendant Fallon Ambulance was a Massachusetts corporation headquartered in Massachusetts with a principal place of business located at 111 Brook Road, Quincy MA 02466.

14.     Defendant Transformative Healthcare is a Massachusetts liability company with its principal place of business located at 275 Grove Street, Newton, MA 02466.

15.     Defendant Coastal Medical is Massachusetts limited liability company with its principal place of business located at 372 Yarmouth Road, Hyannis, MA 02601.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendants.

17.     This Court has personal jurisdiction over Defendants because Defendants maintain their principal places of business in Massachusetts and conduct substantial business in this District through their principal places of business; engaged in the conduct at issue herein from and within this District; and otherwise have substantial contacts with this District.

18.     Venue is proper under 18 U.S.C § 1391(b)(1) because Defendants reside in this District, a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in, was directed to, and/or emanated from this District, and Defendants conduct substantial business in this District.

## **FACTUAL BACKGROUND**

19.     Fallon Ambulance provided emergency medical services to thousands of patients per year. Through their administration of those services as parent companies, Defendants stored and continue to store a vast amount of patients' Private Information. In doing so, Defendants were entrusted with, and obligated to safeguard and protect, the Private Information of Plaintiff and the Class in accordance with all applicable laws.

20.     On April 21, 2023, Defendants were alerted that an unauthorized third party accessed the archival data from Fallon Ambulance's computer network.

21.     In December of 2023, Plaintiff received a notification letter from Transformative Healthcare. The letter reads, in part, as follows:

> We are contacting you to provide information regarding a security incident at Fallon Ambulance Service ("Fallon") that may have impacted some of your information and to inform you about steps you may take to help protect your information. Fallon was a medical transportation company that, in part, responded to patient emergencies in the greater Boston area and provided administrative services for affiliated medical transportation companies. Fallon ceased operations in December 2022 but, to comply with legal obligations, has maintained an archived copy of data previously stored on its computer systems.
>
> What Happened: On or around April 21, 2023, after Fallon had ceased operations, we detected suspicious activity within our data storage archive. We promptly took steps to secure the archive and initiated a comprehensive investigation into the matter with the assistance of third-party specialists. After an extensive review of the event, we identified that the activity appears to have occurred as early as February 17, 2023 through April 22, 2023 and that files

were obtained by an unauthorized party that may have contained personal information. We then conducted a comprehensive evaluation of the potentially impacted files to determine the nature of any personal information contained therein and to identify the current mailing address for potentially impacted individuals. This process was completed on or around December 27, 2023. Based on our review, we determined that the impacted files may have included certain of your personal information. While we currently have no evidence of identity theft or fraud related to your information as a result of this matter, we are notifying you to provide you with information and steps you can take to help protect your information.

22.     The Data Breach occurred because Defendants failed to take reasonable measures to protect the Private Information they collected and stored. Among other things, Defendants failed to implement data security measures designed to prevent this attack, despite repeated public warnings to the healthcare industry about the risk of cyberattacks and the highly publicized occurrence of many similar attacks in the recent past. Defendants did not properly contain patient health data, which requires a heightened level of protection. Defendants failed to disclose to Plaintiff and Class Members the material fact that they did not have adequate data security practices to safeguard customers' personal data, and in fact falsely represented that their security measures were sufficient to protect the Private Information in their possession.

23.     Had Plaintiff known that his data would be stored with improper security measures, he would have reevaluated what information he chose to provide to Fallon Ambulance, which collected and stored the data of thousands of patients or sought another provider of emergency medical services.

24.     Defendants' failure to provide immediate formal notice of the Breach to Plaintiff and Class Members, and their delay of several months in providing notice, exacerbated the injuries resulting from the Data Breach.

A. **Defendants Failed to Maintain Reasonable and Adequate Security Measures to Safeguard Patients' Private Information, Despite a Rise in Data Breaches Affecting the Healthcare Industry**

25.     Defendants were aware of or should have been aware of the risk of data breaches in the healthcare industry, which has had well-publicized breaches from misuse or misconfigurations over the past four years.

26.     Defendants operate major regional healthcare services, yet Defendants did not allocate adequate resources for cybersecurity protection of patient information.

27.     Under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") Defendants had a heightened duty to protect patient Private Information.

28.     Defendants failed to ensure that proper data security safeguards were being implemented throughout the breach period.

29.     Defendants failed to ensure that their healthcare operations would not be impacted in case of a data breach.

30.     Defendants had obligations created by HIPAA, industry standards, common law, and representations made to Class Members to keep Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

31.     Plaintiff and Class Members provided their Private Information to Defendants with the reasonable expectation and mutual understanding that Defendants and any of their affiliates would comply with their obligations to keep such information confidential and secure from unauthorized access.

32.     Defendants' failure to provide adequate security measures to safeguard patients' Private Information is especially egregious because Defendants operate in a field which has recently been a frequent target of scammers attempting to fraudulently gain access to patients'

highly confidential Private Information.

33.     Ponemon Institute, an expert in the annual state of cybersecurity, has indicated that healthcare institutions were the top target for cyber-attacks in 2020.[2]

34.     In fact, Defendants have been on notice for years that the medical industry is a prime target for scammers because of the amount of confidential patient information maintained. In 2019 alone, numerous entities in the healthcare sector suffered high-profile data breaches, including Quest Diagnostics and LabCorp.

**B.     Defendants' Data Security and HIPAA Violations**

35.     Defendants' data security lapses demonstrate that they did not honor their duties to protect patient information by failing to:

    a.  Maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

    b.  Adequately protect patients' Private Information;

    c.  Properly maintain their own data security systems for existing intrusions;

    d.  Ensure that they employed reasonable data security procedures;

    e.  Ensure the confidentiality and integrity of electronically maintained PHI they created, received, maintained, and/or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

    f.  Implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 C.F.R. § 164.308(a)(1)(i);

    g.  Implement procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

    h.  Protect against reasonably anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

---

[2] IBM Security, Cost of a Data Breach Report, PONEMON INST. 5 (2020), https://www.capita.com/sites/g/files/nginej291/files/2020-08/Ponemon-Global-Cost-of-Data-Breach-Study-2020.pdf (last visited January 30, 2024).

i.  Protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

j.  Ensure compliance with HIPAA security standard rules by their workforces in violation of 45 C.F.R. § 164.306(a)(4); and/or Train all members of their workforces effectively on the policies and procedures regarding PHI as necessary and appropriate for the members of their workforces to carry out their functions and to maintain security of PHI, in violation of 45 C.F.R. § 164.530(b).

**C.    Damages to Plaintiff and the Class**

36.    Plaintiff and the Class have been damaged by the compromise of their Private Information in the Data Breach.

37.    The information obtained by hackers and scammers is an extremely valuable commodity that is commonly traded on the black market and results in the diminishment of the value of a person's electronic presence years into the future when it is misused.

38.    Plaintiff and the Class have experienced or currently face a substantial risk of out of-pocket fraud losses such as loss of funds from bank accounts, medical fraud and/or identity theft, fraudulent charges on credit cards, targeted advertising, suspicious phones calls, and similar identity theft.

39.    Plaintiff and Class Members have also incurred out of pocket costs for protective measures such as credit freezes or payment for phone scam detection.

40.    Plaintiff and Class Members suffered a loss of the property value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of the loss of the property value of personal information in data breach cases.

41.    Class Members who paid Fallon Ambulance or Defendants for their services were

also damaged via "benefit of the bargain" damages. Such members of the Class overpaid for a service that was intended to be accompanied by adequate data security—but was not. Part of the price Class Members paid to Fallon Ambulance or Defendants was intended to be used by Fallon Ambulance or Defendants to fund adequate data security. Defendants did not properly comply with their data security obligations. Thus, the Class Members did not get what they paid for.

42.    Members of the Class have spent and will continue to spend significant amounts of time to monitor their financial and medical accounts for misuse.

43.    According to the U.S. Department of Justice Bureau of Justice Statistics, an estimated 17.6 million people were victims of one or more incidents of identity theft in 2014.

44.    Similarly, the FTC cautions that identity theft wreaks havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve. Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[3]

45.    Identity thieves can use the victim's Private Information to commit any number of frauds, such as obtaining a job, loans, or even giving false information to police during an arrest.

46.    In the medical context, Private Information can be used to submit false insurance claims, obtain prescription drugs or medical devices for black-market resale, or get medical treatment in the victim's name. As a result, Plaintiff and Class Members now face a real and continuing immediate risk of identity theft and other problems associated with the disclosure of

---

[3] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number[.]"

their Social Security numbers and will need to monitor their credit and tax filings for an indefinite duration.

47.    In the months and years following the Data Breach, Plaintiff and Class Members will experience a slew of harms because of Defendants' ineffective data security measures. Some of these harms will include fraudulent charges, medical procedures ordered in patients' names without their permission, targeted advertising without patient consent, and emotional distress.

48.    Plaintiff values his privacy, especially in receiving medical services, and would not have paid the amount that he did for services if he had known that his information would be maintained using inadequate data security systems.

D.    **The Value of Privacy Protections and Private Information**

49.    At all relevant times, Defendants were well aware that the Private Information they collect from Plaintiff and Class Members is highly sensitive and of significant value to those who would use it for wrongful purposes.

50.    Private Information is a valuable commodity to cyber attackers. As the Federal Trade Commission ("FTC") recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[4] Indeed, a robust "cyber black market" exists in which criminals openly post stolen PII on multiple underground websites, commonly referred to as the dark web.

51.    The number of U.S. data breaches surpassed 1,000 in 2016, a record high and a forty percent increase in the number of data breaches from the previous year.[5] In 2022, 1,802 data

---

[4]    What    to    Know    About    Identify    Theft,    Fed.    Trade    Comm'n, https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited January 30 2024).
[5] Data Breaches Increase 40 Percent in 2016, Finds New Report From Identity Theft Resource Center    and    CyberScout,    CISION    PR    NEWSWIRE (Jan.    19,    2017)

compromises were reported that impacted over 422 million victims—marking a 42% increase in the number of victims impacted since 2021.[6] That upward trend continues.

52.     The ramifications of Defendants' failures to keep Plaintiff's and Class Members' Private Information secure are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for six to 12 months or even longer.

53.     Further, criminals often trade stolen PII on the "cyber black- market" for years following a breach. Cybercriminals can post stolen PII on the internet, thereby making such information publicly available.

54.     Approximately 21 percent of victims do not realize their identities have been compromised until more than two years after it has happened. This gives data thieves ample time to seek multiple treatments under the victim's name.

55.     Medical information is especially valuable to identity thieves. Because of its value, the medical industry has experienced disproportionally higher numbers of data theft events than other industries. Defendants knew or should have known this and strengthened their data systems accordingly, and of the foreseeable consequences if its data security systems were breached. This includes the significant costs that would be imposed on Plaintiff and Class Members as a result of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

https://www.prnewswire.com/news-releases/data-breaches-increase-40-percent-in-2016-finds-new-report-from-identity-theft-resource-center-and-cyberscout-300393208.html    (last    visited January 30 2024).
[6] 2022 Annual Data Breach Report, IDENTITY THEFT RES. CTR., https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited January 30, 2024).

E.    **Duties and Responsibilities of Transformative Healthcare and Coastal Medical**

56.    After Fallon Ambulance ceased operations in December 2022, Transformative Healthcare retained an archived copy of data (including Plaintiff's and Class Members' Private Information) that was previously stored on Fallon's computer systems. Transformative Healthcare then maintained this data (including patients' Private Information) on its network.

57.    While it maintained the Fallon Ambulance archival data on its network, which it did at the time of the Data Breach, Transformative Healthcare was responsible for securing, safeguarding, and maintaining the confidentiality of Plaintiff's and Class Members' Private Information.

58.    During the period from February 17, 2023 through April 22, 2023, when the Data Breach took place, Transformative Healthcare had a duty to secure, safeguard, and maintain the confidentiality of Plaintiff's and Class Members' Private Information.

59.    By failing to provide adequate security for Plaintiff's and Class Members' Private Information, as stated in detail herein, Transformative Healthcare breached that duty.

60.    Transformative Healthcare discovered the Data Breach on or about April 21, 2023, but did not provide notice to the affected individuals, including Plaintiff and Class Members, until more than eight months later, on December 27, 2023. By this conduct, Transformative Healthcare breached its duty to Plaintiff and Class Members to provide prompt notice of the Data Breach to affected persons. The existence of this duty is supported by, among other provisions, M.G.L., c. 93H, § 3.

61.    After Coastal Medical completed its acquisition of Fallon Ambulance in December 2022, Fallon Ambulance ceased to exist as an independent entity; Coastal Medical absorbed Fallon Ambulance's employees and operations into its corporate structure, including rebranding with the

13

Coastal name and logo.

62.    At this point, and through at least the time of the Data Breach and its public disclosure, Coastal Medical and its management maintained total control over Fallon Ambulance's former employees and operations, and was responsible for all aspects of these operations, including providing adequate cyber-security.

63.    In addition, through its acquisition of Fallon Ambulance and the due diligence conducted in connection with the acquisition, Coastal Medical knew that Fallon Ambulance had possession of patients' Private Information and it knew that Fallon Ambulance would and was required to maintain archival data, including the Private Information, after it ceased operations. Coastal Medical was also aware of Transformative Healthcare's role in maintaining the Fallon Ambulance's archival data.

64.    Because of this knowledge and because at the time of the Data Breach, Coastal Medical was in control of Fallon Ambulance's former employees and operations, Fallon Ambulance had a duty to ensure that the Fallon Ambulance archival data maintained by Transformative Healthcare was properly and adequately secured and protected and that proper cyber-security measures were in place.

65.    Coastal Medical breached this duty, for the reasons alleged in detail herein.

## CLASS ACTION ALLEGATIONS

66.    Plaintiff brings claims on behalf of himself, and for certain claims, on behalf of the proposed class of:

> All individuals who received a notice of data breach from Transformative Healthcare in or around December of 2023 (the "Class").

67.    The following people are excluded from the class: (1) any Judge or Magistrate

Judge presiding over this action and the members of their family; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or its parents have a controlling interest and their current employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

68. **Numerosity**: The proposed class contains members so numerous that separate joinder of each member of the class is impractical. Defendants have identified at least 911,757 individuals whose Private Information may have been improperly accessed and compromised in the Data Breach.

69. **Commonality**: There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

    a.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations including, inter alia, HIPAA;

    b.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

    c.  Whether Defendants properly implemented their purported security measures to protect Plaintiff's and Class Members' Private Information from unauthorized capture, dissemination, and misuse;

    d.  Whether Defendants took reasonable measures to determine the extent of the Data Breach after they first learned about it;

    e.  Whether Defendants disclosed Plaintiff's and Class Members' Private Information in violation of the understanding that the Private Information was being disclosed in confidence and should be maintained;

    f.  Whether Defendants' conduct constitutes breach of an implied contract;

g. Whether Defendants willfully, recklessly, or negligently failed to maintain and execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and Class Members' Private Information;

h. Whether Defendants were unjustly enriched by their actions; and

i. Whether Plaintiff and the other members of the Class are entitled to damages, injunctive relief or other equitable relief, and the measure of such damages and relief.

70. ***Typicality***: Plaintiff's claims are typical of the claims of the members of the Class. The claims of Plaintiff and Class Members are based on the same legal theories and arise from the same unlawful and willful conduct because all had their Private Information compromised as a result of the Data Breach, due to Defendants' misfeasance.

71. ***Policies Generally Applicable to the Class***: This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply to and affect the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

72. ***Adequacy of Representation***: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to the members of the Class. In addition, Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation. The claims of Plaintiff and the Class Members are substantially identical as explained above.

73.    ***Superiority***: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-making.

74.    ***Predominance***: Common questions of law and fact predominate over any questions affecting only individual Class Members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendants breached their duty to Plaintiff and Class Members, then Plaintiff and each Class member suffered damages by that conduct.

75.    ***Injunctive Relief***: Defendants has acted and/or refused to act on grounds that apply generally to the Class, making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

76.    ***Ascertainability***: Members of the Class are ascertainable. Class Membership is defined using objective criteria, and Class Members may be readily identified through Defendants' books and records.

## CLAIMS FOR RELIEF

**FIRST CAUSE OF ACTION**
**Negligence**
**(On Behalf of Plaintiff and the Class)**

77.    Plaintiff restates and realleges the foregoing allegations as if fully set forth herein.

78.    Upon Defendants accepting and storing the Private Information of Plaintiff and the Class on their computer systems and on their networks, Defendants undertook and owed a duty to Plaintiff and the Class to exercise reasonable care to secure and safeguard that information and to use commercially reasonable methods to do so. Defendants knew that the Private Information was private and confidential and should be protected as private and confidential.

79.    Defendants owed a duty of care not to subject Plaintiff and the Class's Private Information to an unreasonable risk of exposure and theft, because Plaintiff and the Class were foreseeable and probable victims of any inadequate security practices.

80.    Defendants owed numerous duties to Plaintiff and the Class, including the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting Private Information in their possession;

    b.  To protect Private Information using reasonable and adequate security procedures and systems that are compliant with industry-standard practices; and

    c.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

81.    Defendants also breached their duty to Plaintiff and Class Members to adequately protect and safeguard Private Information by disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information. Furthering their dilatory practices, Defendants failed to provide adequate supervision and oversight of the Private Information with which they were and are

entrusted, despite the known risk and foreseeable likelihood of breach and misuse, which permitted a malicious third party to gather Plaintiff's and Class Members' Private Information and potentially misuse the Private Information and intentionally disclose it to others without consent.

82.    Defendants knew, or should have known, of the risks inherent in collecting and storing Private Information and the importance of adequate security. Defendants knew or should have known about numerous well-publicized data breaches within the medical industry.

83.    Defendants knew, or should have known, that their data systems and networks did not adequately safeguard Plaintiff's and Class Members' Private Information.

84.    Defendants breached their duties to Plaintiff and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiff's and Class Members' Private Information.

85.    Because Defendants knew that a breach of their systems would damage thousands of their customers, including Plaintiff and Class Members, Defendants had a duty to adequately protect their data systems and the Private Information contained thereon.

86.    Defendants' duty of care to use reasonable security measures arose because of the special relationship that existed between Defendants and their patients, which is recognized by laws and regulations including but not limited to HIPAA and common law. Defendants were in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Class Members from a data breach.

87.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(1). Some or all of the

medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

88.    In addition, Defendants had a duty to employ reasonable security measures under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

89.    Defendants' duty to use reasonable care in protecting confidential data arose not only because of the statutes and regulations described above, but also because Defendants are bound by industry standards to protect confidential Private Information.

90.    Defendants' own conduct also created a foreseeable risk of harm to Plaintiff and Class Members and their Private Information. Defendants' misconduct included failing to: (1) secure Plaintiff's and Class Members' Private Information; (2) comply with industry standard security practices; (3) implement adequate system and event monitoring; and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

91.    Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information, and by failing to provide timely notice of the Data Breach. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

      a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

      b.   Failing to adequately monitor the security of Defendants' networks and systems;

      c.   Allowing unauthorized access to Class Members' Private Information; and

d.  Failing to timely notify Class Members about the Data Breach so that they could take appropriate steps to mitigate the potential for identity theft and other damages.

92.    Through Defendants' acts and omissions described in this Complaint, including their failure to provide adequate security and their failure to protect Plaintiff's and Class Members' Private Information from being foreseeably captured, accessed, disseminated, stolen and misused, Defendants unlawfully breached their duty to use reasonable care to adequately protect and secure Plaintiff's and Class Members' Private Information during the time it was within Defendants' possession or control.

93.    Defendants' conduct was grossly negligent and departed from all reasonable standards of care, including, but not limited to, failing to adequately protect the Private Information and failing to provide Plaintiff and Class Members with timely notice that their sensitive Private Information had been compromised.

94.    Neither Plaintiff nor the other Class Members contributed to the Data Breach and subsequent misuse of their Private Information as described in this Complaint.

95.    As a direct and proximate cause of Defendants' conduct, Plaintiff and Class Members suffered damages as alleged above.

96.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, inter alia, (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide lifetime free credit monitoring to all Class Members.

**SECOND CAUSE OF ACTION**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

97.    Plaintiff restates and realleges the foregoing allegations as if fully set forth herein.

98.     Through their course of conduct, Defendants, Plaintiff, and Class Members entered into implied contracts for the provision of healthcare and data administration services, as well as implied contracts for the implementation of data security adequate to safeguard and protect the privacy of Plaintiff's and Class Members' Private Information.

99.     Specifically, Plaintiff and Class Members entered into valid and enforceable implied contracts with Fallon Ambulance when they first entered into contracts with Fallon Ambulance to receive medical services. Defendants assumed and took on the obligations of Fallon Ambulance under these implied contracts when Fallon ceased operations.

100.    The valid and enforceable implied contracts to provide medical services that Fallon Ambulance entered into with Plaintiff and Class Members (and that were later assumed by Defendants) include Defendants' promise to protect nonpublic Private Information given to Defendants or that Defendants created on their own from disclosure.

101.    When Plaintiff and Class Members provided their Private Information to Fallon Ambulance in exchange for medical services, they entered into implied contracts pursuant to which Fallon, and subsequently Defendants, agreed to reasonably protect such Private Information.

102.    Fallon solicited and invited Class Members to provide their Private Information as part of Fallon's regular business practices. Plaintiff and Class Members accepted Fallon Ambulance's offers and provided their Private Information to Fallon Ambulance. This Private Information was later maintained by or under the control of Defendants, who assumed the obligation to secure and protect it.

103.    Plaintiff and Class Members have fully performed their obligations under these contracts.

104.    By entering into such implied contracts, Plaintiff and Class Members reasonably believed and expected that Defendants' data security practices complied with relevant laws and regulations and were consistent with industry standards.

105.    Class Members who paid money to Defendants reasonably believed and expected that Defendants would use part of those funds to obtain adequate data security. Defendants failed to do so.

106.    Under these implied contracts, Defendants was obligated to: (a) provide medical services to Plaintiff and Class Members; and (b) protect Plaintiff and Class Members' Private Information provided to obtain the benefits of such services. In exchange, Plaintiff and members of the Class agreed to pay money for these services, and to turn over their Private Information.

107.    Both the provision of medical services and the protection of Plaintiff and Class Members' Private Information were material aspects of these implied contracts.

108.    The implied contracts for the provision of medical services include the contractual obligations to maintain the privacy of Plaintiff and Class Members' Private Information, which are also acknowledged, memorialized, and embodied in multiple documents (including, among other documents, Defendants' Data Breach notification letter).

109.    Consumers of medical services value their privacy, the privacy of their dependents, and the ability to keep confidential their Private Information associated with obtaining such services. Plaintiff and Class Members would not have entrusted their Private Information to Defendants and entered into these implied contracts with Defendants without an understanding that their Private Information would be safeguarded and protected; nor would they have entrusted their Private Information to Defendants in the absence of their implied promise to monitor their computer systems and networks to ensure that it adopted reasonable data security measures.

110.    A meeting of the minds occurred as Plaintiff and Class Members agreed and provided their Private Information to Defendants and paid for the provided services in exchange for, among other things, both the provision of healthcare and the protection of their Private Information.

111.    Plaintiff and Class Members performed their obligations under the contract when they paid for Defendants' services and/or provided Defendants with their Private Information.

112.    Defendants materially breached their contractual obligation to protect the nonpublic Private Information Defendants gathered when the Private Information was accessed and exfiltrated through the Data Breach.

113.    Defendants materially breached the terms of these implied contracts. Defendants did not maintain the privacy of Plaintiff and Class Members' Private Information as evidenced by their notifications of the Data Breach to Plaintiff and Class Members. Specifically, Defendants did not comply with industry standards, standards of conduct embodied in statutes like Section 5 of the FTCA or HIPAA, or otherwise protect Plaintiff and Class Members' private information as set forth above.

114.    The Data Breach was a reasonably foreseeable consequence of Defendants' actions in breach of these contracts.

115.    As a result of Defendants' failure to fulfill the data security protections promised in these contracts, Plaintiff and Class Members did not receive full benefit of the bargain, and instead received healthcare and other services that were of a diminished value to that described in the contracts. Plaintiff and Class Members, therefore, were damaged in an amount at least equal to the difference in the value between the healthcare with data security protection they paid for and the healthcare they received.

116.    Had Defendants disclosed that their data security was inadequate or that they did not adhere to industry-standard security measures, neither the Plaintiff, Class Members, nor any reasonable person would have gone to Defendants to obtain healthcare services.

117.    As a direct and proximate result of the Data Breach, Plaintiff and Class Members have been harmed and suffered, and will continue to suffer, actual damages and injuries, including without limitation the release and disclosure of their Private Information, the loss of control of their Private Information, the imminent risk of suffering additional damages in the future, disruption of their medical care and treatment, out of pocket expenses to mitigate the effects of the Data Breach, including time lost responding to the Breach, and the loss of the benefit of the bargain they struck with Defendants.

118.    Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach.

119.    Plaintiff and Class Members are also entitled to injunctive relief requiring Defendants to, e.g., (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate credit monitoring to all Class Members.

**THIRD CAUSE OF ACTION**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

120.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

121.    Plaintiff brings this claim in the alternative to his breach of implied contract claim.

122.    Plaintiff and Class Members conferred a monetary benefit on Defendants. Specifically, they purchased goods and services from Defendants and provided Defendants with their Private Information. In exchange, Plaintiff and Class Members should have received from

Defendants the goods and services that were the subject of the transaction and should have been entitled to have Defendants protect their Private Information with adequate data security.

123.    Defendants knew that Plaintiff and Class Members conferred a benefit on Defendants and have accepted or retained that benefit. Defendants profited from Plaintiff's purchases and used Plaintiff's and Class Members' Private Information for business purposes.

124.    Defendants failed to secure Plaintiff's and Class Members' Private Information and, therefore, did not fully compensate Plaintiff and Class Members for the value that their Private Information provided.

125.    Defendants acquired the Private Information through inequitable means as it failed to disclose the inadequate security practices previously alleged.

126.    If Plaintiff and Class Members knew that Defendants would not secure their Private Information using adequate security, they would have made alternative healthcare choices that excluded Defendants.

127.    Plaintiff and Class Members have no adequate remedy at law.

128.    Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiff and Class Members conferred on them.

129.    Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that it unjustly received from them. In the alternative, Defendants should be compelled to refund the amounts that Plaintiff and Class Members overpaid.

**FOURTH CAUSE OF ACTION**
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiff and the Class)**

130.    Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

131.    Defendants had a fiduciary duty to safeguard patient Private information, which included that of Plaintiff and Class Members.

132.    Defendants breached this duty when they did not protect Plaintiff's and Class Members' Private Information.

133.    Defendants breached this duty when they did not provide adequate and timely notification of the Data Breach to Plaintiff and Class Members.

134.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.306(a)(1) by failing to ensure the confidentiality and integrity of Plaintiff's and Class member's protected and electronic health information that Defendants created, received, maintained, and transmitted.

135.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.312(a)(1) by failing to implement technical policies and procedures for their electronic information systems housing Private Information.

136.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.308(a)(1) by failing to implement policies and procedures to prevent, detect, contain, and correct security violations.

137.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.308(a)(6)(ii) by failing to mitigate, to the extent practicable, harmful effects of security incidents that were known to Defendants.

138.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.306(a)(2) by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic Private Information.

139.    Defendants breached their fiduciary duty when they violated 45 C.F.R. §106.308(a)(6)(ii) by failing to mitigate harmful effects of security incidents known to Defendants.

140.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.306(a)(2) by failing to protect against reasonably anticipated threats or hazards to the security or integrity of electronic Private Information.

141.    Defendants violated 45 C.F.R. § 164.306(a)(3) when they failed to protect against reasonably anticipated uses or disclosures.

142.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.530(b), and 45 C.F.R. § 164.308(a)(5) by failing to ensure that their workforce complied with HIPAA and failing to provide adequate training to their workforce.

143.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.502 by impermissibly and improperly using and disclosing Private Information that remains accessible to unauthorized people.

144.    Defendants breached their fiduciary duty when they violated 45 C.F.R. § 164.530(c) by failing to design, implement, and enforce policies and procedures to establish a physical administrative safeguard to protect Private Information.

145.    Plaintiff and Class Members face injuries as a direct and proximate result of Defendants' breaches of their fiduciary duties. These injuries include, but are not limited to:

  a.  Loss of control over Private Information;

  b.  Compromise of Private Information;

  c.  Lost opportunity costs associated with time spent to protect themselves and mitigate harm;

  d.  Continued risk that Plaintiff's and Class Members' Private Information could be stolen again;

e.   Future costs associated with time spent protecting themselves from future harm;

f.   Diminished value of Defendants' services;

g.   Diminished value of Private Information;

h.   Anxiety, emotional distress, loss of privacy, and other economic and noneconomic losses.

### FIFTH CAUSE OF ACTION
### Declaratory Relief
### (On Behalf of Plaintiff and the Class)

146.   Plaintiff repeats and re-alleges the foregoing allegations as if fully set forth herein.

147.   Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, et seq., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

148.   An actual controversy has arisen in the wake of the Data Breach regarding Defendants' common law and other duties to act reasonably with respect to safeguarding the data of Plaintiff's and Class Members' Private Information, and whether Defendants are currently maintaining data security measures adequate to protect Plaintiff and Class Members from further data breaches that compromise their Private Information. Plaintiff and the Class remain at imminent risk that further compromises of their Private Information will occur in the future.

149.   The Court should also issue prospective injunctive relief requiring Defendants to employ adequate security practices consistent with law and industry standards to protect patient Private Information.

150.   Defendants still possess the Private Information of Plaintiff and the Class. Defendants have made no announcement that they have changed their data storage or security practices related to the Private Information.

151.    Defendants have made no announcement or notification that they have remedied the vulnerabilities and negligent data security practices that led to the Data Breach.

152.    If an injunction is not issued, Plaintiff and the Class will suffer irreparable injury and lack an adequate legal remedy in the event of another data breach. The risk of another data breach is real, immediate, and substantial.

153.    The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Among other things, if another data breach occurs, Plaintiff and Class Members will likely continue to be subjected to fraud, identify theft, and other harms described herein. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

154.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach, thus eliminating the additional injuries that would result to Plaintiff and Class Members, along with other patients whose Private Information would be further compromised.

155.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Defendants shall implement and maintain reasonable security measures, including but not limited to the following:

    a.   Engaging third-party security auditors/penetration testers, as well as internal security personnel, to conduct testing that includes simulated attacks, penetration tests, and audits on their systems on a periodic basis, and ordering them to promptly correct any problems or issues detected by such third-party security auditors;

    b.   Engaging third-party security auditors and internal personnel to run automated security monitoring;

    c.   Auditing, testing, and training their security personnel regarding any new or modified procedures;

    d.   Purging, deleting, and destroying Private Information not necessary for their provisions of services in a reasonably secure manner;

    e.   Conducting regular database scans and security checks; and

    f.   Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief as follows:

    A.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

    B.   For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

    C.   For damages in an amount to be determined by the trier of fact;

    D.   For an order of restitution and all other forms of equitable monetary relief;

    E.   Declaratory and injunctive relief as described herein;

    F.   Awarding Plaintiff's reasonable attorneys' fees, costs, and expenses;

    G.   Awarding pre- and post-judgment interest on any amounts awarded; and

    H.   Awarding such other and further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

A jury trial is hereby demanded for all claims so triable.

Dated: January 31, 2024

Respectfully submitted,

**BAILEY GLASSER LLP**

*/s/ Elizabeth Ryan*
Elizabeth Ryan, Esq.
Bar No. 549632
176 Federal Street, 5th Floor
Boston, MA 02110
(617) 439-6730
eryan@baileyglasser.com

**BAILEY GLASSER LLP**
Bart D. Cohen, Esq.*
1622 Locust Street
Philadelphia, PA 19103
(215) 274-9420
bcohen@baileyglasser.com

Alan M. Feldman, Esq.*
Zachary Arbitman, Esq.*
Samuel Mukiibi, Esq.*
**FELDMAN SHEPHERD WOHLGELERNTER
TANNER WEINSTOCK & DODIG, LLP**
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
T: (215) 567-8300
F: (215) 567-8333
afeldman@feldmanshepherd.com
zarbitman@feldmanshepherd.com
smukiibi@feldmanshepherd.com


*Attorneys for Plaintiff and the Class*
*\*Pro Hac Vice Forthcoming*